Rosamond B. FLETCHER *v.* David F. FLETCHER

CA 86-411 726 S.W.2d 684

Court of Appeals of Arkansas
Division II
Opinion delivered April 1, 1987

*Howard & Howard*, by: *William B. Howard*, for appellant.

*Mooney & Boone*, by: *Charles M. Mooney, Sr.*, for appellee.

JAMES R. COOPER, Judge. The appellant in this child custody case challenges the jurisdiction of an Arkansas chancery court to grant custody of the parties' minor child to the appellee. We agree that the chancery court lacked jurisdiction to make the child custody determination, and we reverse.

The appellant is a citizen of Great Britain and a resident alien in the United States. The parties met in England while the appellee, an enlisted man in the United States Air Force, was stationed at RAF Fairford. They were married in Blytheville, Arkansas, on August 19, 1980. The day after they were married, the parties left for Denver, Colorado, where they resided for approximately two years. Andrew Fletcher, the parties' son, was born in Colorado in 1981. In December, 1982, the parties moved from Denver to Springfield, Virginia, and lived there until they separated in October, 1983. A petition for divorce was filed in March, 1984, in the Circuit Court of Fairfax County, Virginia. In a separate action in the Juvenile and Domestic Relations Court of Fairfax County, Virginia, the parties were awarded joint custody of Andrew, with physical custody of the child with the appellee.

The parties reconciled in November, 1984, and lived together at Boling Air Force Base in Washington, D.C. However, they separated again on January 15, 1985, and the appellant moved to Manassas, Virginia. On January 29, 1985, the appellant obtained a temporary restraining order from the Superior Court of the District of Columbia to prevent the appellee from removing the child from that court's jurisdiction. On February 4, 1985, the District of Columbia court issued a preliminary injunction ordering the appellee to return Andrew to the Washington, D.C. metropolitan area. However, before the appellee was served with these orders he and the child had departed for Stuttgart, Germany, the appellee's new duty station.

In May, 1985, the appellee filed a petition for divorce in the chancery court of Craighead County, Arkansas, alleging that he was a permanent resident of Monette, Arkansas. The appellant was served with a summons in Manassas, Virginia, but she filed no answer and did not appear. The appellee and his brother, Royal Fletcher, testified by deposition; a divorce was granted and the appellee was awarded custody of Andrew. From that decision, comes this appeal. For reversal, the appellant contends that the chancery court lacked jurisdiction to order a change in custody.

At a hearing on the appellant's motion to vacate and set aside the decree, the appellant testified that she had never lived in Arkansas, that she and the appellee had never established a marital domicile in Arkansas, and that her child was born in Colorado and had never lived in Arkansas. She further testified that the appellee had not resided in Arkansas at any time from the date of their marriage in 1980 to the time of the hearing, and that the appellee and Andrew were not in Arkansas when the divorce decree was rendered, but rather were in Stuttgart, Germany.

The jurisdiction of Arkansas courts to make child custody determinations is governed by Ark. Stat. Ann. § 34-2703 (Supp. 1985), which provides in pertinent part that a court has jurisdiction if:

> (a)(1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding . . . or

> (2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one [1] contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

> (3) the child is physically present in this State [and an emergency exists] . . . or

> (4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to

exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

■ Subsection (a)(1) of this statute does not provide a basis for the exercise of jurisdiction under the circumstances presented in the case at bar, because Arkansas is not now and never has been Andrew's "home state," defined in Ark. Stat. Ann. § 34-2702(5) as the state in which the child has resided with one parent, both parents, or a person acting as a parent for at least six months immediately preceding the time involved. Neither is subsection (a)(3) applicable, because Andrew was not physically present in Arkansas at the time that the court purported to exercise jurisdiction.

■ The appellee argues that jurisdiction to order a grant of custody existed under subsection (a)(2), which provides that jurisdiction may be exercised if it is in the best interest of the child that the court do so, because the child and at least one of the parents have a significant connection with Arkansas, and because there exists in Arkansas substantial evidence concerning the child's welfare and personal relationships. Ark. Stat. Ann. § 34-2703(a)(2). We do not agree that Andrew has a significant connection to Arkansas. It is undisputed that Andrew was born in Colorado and has never resided in Arkansas. Moreover, there is no evidence of record to suggest that Andrew has ever so much as visited Arkansas. The extent of Andrew's connection to Arkansas is that his father, a career military man, claims Arkansas as his permanent residence, and that some of Andrew's paternal relatives reside in Arkansas. In light of the undisputed evidence that Andrew's father has not resided in Arkansas since before Andrew was born, we think that the "significant connection" required by the statute is lacking.

■ Nor does the record show that there exists in Arkansas substantial evidence concerning Andrew's welfare and personal relationships, required by subsection (a)(2)(ii) as a prerequisite to the exercise of jurisdiction. The only Arkansas source of evidence concerning Andrew's welfare and relationships was the deposition of the appellee's brother, Royal Fletcher, and this evidence was limited to his statement that the appellee "is a

wonderful father and has great love and affection for Andrew." Under the circumstances presented here, where the child has no significant connection to Arkansas and where evidence of his welfare and personal relationships is all but absent, subsection (a)(2) does not provide a basis for the exercise of jurisdiction.

■ Neither are we convinced that the chancery court had jurisdiction under subsection (a)(4). This is not a case in which another state has declined to exercise jurisdiction on the ground that Arkansas would be a more appropriate forum for a determination of custody. To the contrary, an action involving Andrew's custody was filed in Virginia in 1984, and another in the District of Columbia only a few months before the appellee filed his petition in the case at bar. Both Virginia and the District of Columbia had been marital domiciles of the parties, and Andrew had resided in both locales. We do not doubt that either Virginia, the District of Columbia, or both could exercise jurisdiction under the prerequisites substantially in accordance with paragraphs (1), (2) or (3) of Ark. Stat. Ann. § 34-2703. We therefore hold that there was no basis for the trial court's exercise of jurisdiction under § 34-2703 in the case at bar, and we reverse.

Reversed.

COULSON and MAYFIELD, JJ., agree.